# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

| | |
|---|---|
| ALEXANDER BEADLE, | |
| *Plaintiff,* | CIVIL ACTION NO. |
| v. | 5:17-cv-00317-TES |
| MASSIMO DANESE, *et al.,* | |
| *Defendants.* | |

## ORDER GRANTING DEFENDANT DANESE'S
## MOTION FOR SUMMARY JUDGMENT

Presently before the Court is Defendant Massimo Danese's Motion for Summary

Judgment [Doc. 9], which, for the reasons that follow, is **GRANTED**.[1]

## FACTUAL BACKGROUND

The parties contest certain facts about the events giving rise to this action,

particularly with regard to a video entered into the record. Video evidence in the form of

Officer Danese's patrol car dash camera footage has been entered in evidence, [Doc. 16,

Ex. F], and to the extent "the video obviously contradicts Plaintiff's version of the facts,

[the Court] accept[s] the video's depiction instead of Plaintiff's account." *Pourmoghani-*

*Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010) (citing *Scott v. Harris*, 550 U.S. 372, 380

---

[1] Plaintiff also brought suit against three John Doe defendants. Because Plaintiff never amended his Complaint to identify these defendants and because they have not been served, the Court lacks jurisdiction over them, and the claims against them are **DISMISSED without prejudice**. *See Slaughter v. City of Unadilla*, No. 5:06-cv-187 (CAR), 2008 WL 345794, at *1, 3 (M.D. Ga. Feb. 5, 2008).

(2007)). However, where the video evidence does not obviously contradict Plaintiff's version of the facts, the Court accepts Plaintiff's version and draws all reasonable inferences in Plaintiff's favor. *Id.* (citing *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008)).

On July 2, 2015, at approximately 5:40 a.m., while patrolling Highway 19/41 northbound in Henry County, Georgia, Henry County Police Officer Massimo Danese witnessed a green 2014 Kia Soul also traveling northbound in another lane. [Doc. 12-19, ¶¶ 4, 5; Doc. 14-2, pp. 29:21—30:2]. Officer Danese noticed that the Kia did not have a registration decal on the license plate and radioed Henry County dispatch to run the plate through the Georgia Crime Information Center ("GCIC"). [Doc. 12-19, ¶¶ 6, 7]. While he gave the dispatcher the tag information, Officer Danese drove around the Kia to see how many occupants were inside, a habit he developed "just to get an idea of what I'm getting into." [*Id.* at ¶ 8]. Officer Danese witnessed one person in the vehicle, the driver. [Doc. 14-2, p. 36:7-10].

The dispatcher then informed Officer Danese that the vehicle did not have valid insurance and the registration was suspended, both in violation of Georgia law. [Doc. 12-19, ¶¶ 10, 11]. Officer Danese activated his patrol car lights in an attempt to initiate a traffic stop with the Kia and simultaneously activated his patrol car dash camera. [*Id.* at ¶¶ 12, 13]. The dash camera recorded the 90 seconds prior to its activation as well as the subsequent events. [*Id.* at ¶ 14; Doc. 16, Ex. F].

After Officer Danese turned on his patrol car lights, the Kia moved to the right lane and turned into a food mart. [Doc. 14-2, p. 31:21-25]. As the vehicles entered the food mart area, the Kia slowed, and the driver exited the vehicle and ran. [Doc. 12-19, ¶¶ 18, 19]. The Kia, which the driver did not put in park before he fled, rolled back into Officer Danese's patrol car, allowing the driver to get a head start on foot. [*Id.* at ¶ 19]. As the driver exited the car and ran toward a wooded area near the food mart, Officer Danese testified that he saw the driver's profile. [Doc. 14-2, p. 32:14-18]. Neither Officer Danese nor any other responding officer apprehended the driver. [Doc. 12-19, ¶¶ 22, 23]. In the dash camera footage, Officer Danese can be heard telling responding officers that the driver was a black male approximately 5'9" tall, weighing about 180 pounds, and wearing a blue shirt. [Doc. 16, Ex. F, 03:06]. He later testified that the driver had short hair about half an inch long. [Doc. 14-2, p. 36:17-25].

Officer Danese subsequently searched the Kia and found a Farmers Insurance business card in the passenger seat with Plaintiff's name and photo printed on the front. [Doc. 12-19, ¶¶ 24, 25]. He also found a traffic citation dated April 11, 2015, for driving with a suspended registration, which was issued to Plaintiff by the Dekalb County Police Department. [*Id.* at ¶ 26]. Officer Beadle also determined that the Kia was registered to Plaintiff. [*Id.* at ¶ 27]. The officers on the scene found a cold beer in the cupholder of the Kia, as well as a nearly empty bottle of liquor and a glass pipe commonly used to smoke

crack cocaine (hereinafter "crack pipe") containing what appeared to be cocaine residue. [*Id.* at ¶¶ 29, 30].

Officer Danese testified that upon finding the business card and verifying the registered owner of the Kia through the GCIC database, he determined that Plaintiff was the driver who fled the scene. [Doc. 14-2, pp. 37:21—38:20]. Plaintiff contests Officer Danese's identification of the driver because, he argues, the dash camera footage does not show the driver's face, and it appears that the driver is intentionally blocking his face. [Doc. 12-19, ¶ 28 Response]. Plaintiff also argues that the driver appears to have long hair in the dash camera footage, in contradiction to Officer Danese's testimony that the driver had short hair. [*Id.*].

Based on his observations at the time of the incident and the items found in the Kia, Officer Danese immediately applied for an arrest warrant through the Magistrate Court of Henry County. [*Id.* at ¶ 31; Doc. 9-3, pp. 21, 24]. Officer Danese's affidavit in support of the warrant application, dated July 2, 2015, states as follows:

> ON 07-02-15 AROUND 0540 HOURS MR ALEXANDER BEADLE II DID COMMIT THE CRIMINAL ACT OF DRIVING WHILE SUSPENDED, DRIVING WITH NO INSURANCE, DRIVING WITH SUSPENDED REGISTRATION, DRIVING WITH OPEN CONTAINER, AND WILLFUL OBSTRUCTION OF LAW [ENFORCEMENT] OFFICER, WHEN HE FLED ON FOOT DURING A VEHICLE TRAFFIC STOP ON HWY 19/41 NB HAMPTON GA 30228. MR BEADLE II ALSO LEFT THE VEHICLE HE HAD BEEN OPERATING ON 19/41 IN NEUTRAL WHICH ROLLED BACK STRIKING OFFICER'S VEHICLE. INCIDENT CAPTURED ON VIDEO. THE TAG ON THE VEHICLE WAS SUSPENDED FOR NO INSURANCE, THERE WAS NO INSURANCE ON THE VEHICLE, AND DEFENDANT'S DRIVER'S LICENSE WAS SUSPENDED FOR CHILD

SUPPORT. AN OPEN BOTTLE OF BEER AND A FLASK OF WHISKEY WERE LOCATED IN THE VEHICLE.

[Doc. 9-3, p. 24]. Officer Danese also testified that he spoke with the magistrate judge and told him his version the events, including everything he stated in his deposition about seeing the driver's profile. [Doc. 14-2, pp. 32:14-18, 55:8-25]. The magistrate judge found probable cause and issued a warrant for Plaintiff's arrest, and Plaintiff was arrested on November 16, 2015. [Doc. 12-19, ¶ 33]. Plaintiff posted bond and was released less than nine hours after his arrest. [*Id.* at ¶ 34].

On February 17, 2016, the Georgia Bureau of Investigation tested the crack pipe and residue found inside it and determined that the residue contained cocaine. [Doc. 9-3, p. 36]. Based on these test results, Officer Danese applied for a second arrest warrant on March 14, 2016. [Doc. 12-19, ¶ 37]. The accompanying affidavit stated:

> DURING A TRAFFIC STOP ON 07/02/15 AROUND 0540AM FROM WHICH MR ALEXANDER BEADLE II RAN OFF, A SMALL QUANTITY OF COCAINE WAS LOCATED IN A GLASS PIPE INSIDE THE VEHICLE, A SCHEDULE I CONTROLLED SUBSTANCE, IN VIOLATION OF THE GEORGIA CONTROLLED SUBSTANCE ACT. GBI SUBMISSION CONFIRMED THE SUSPECTED COCAINE RESIDUE FROM THE PIPE.

[Doc. 9-3, p. 21]. The magistrate judge issued another arrest warrant based on this affidavit and Plaintiff was arrested a second time on March 15, 2016 for the illegal possession of a controlled substance. [*Id.*; *Id.* at p. 55; Doc. 12-19, ¶ 38]. Plaintiff again posted bond and was released. [Doc. 12-19, ¶ 39]. A grand jury eventually returned a "no bill" on this charge. [*Id.* at ¶ 40; Doc. 9-3, p. 16].

On May 3, 2016, the Henry County Solicitor-General issued a five-count accusation against Plaintiff. [Doc. 12-19, ¶ 34]. The charges included one count of driving without a valid license, one count of no proof of insurance, one count of obstruction of officers, one count of possession of an open container, and one count of possession of a drug related object. [*Id.*; Doc. 9-3, p. 7].

In September 2016, Plaintiff, his fiancé, and his daughter each submitted affidavits to the Henry County Solicitor-General in which they swore that Plaintiff was at home on the night of the attempted traffic stop and that Plaintiff's friend, Samuel Wilson, admitted to taking Plaintiff's Kia without permission and drinking and doing drugs. [Doc. 12-19, ¶ 42; Doc. 9-3, pp. 46-53].[2] A person claiming to be Samuel Wilson also called an investigator in the Solicitor-General's Office and admitted to being the driver. [Doc. 12-19, ¶ 43]. However, "Mr. Wilson" refused to provide any more information to the investigator. [*Id.*]. As a result of these events, the Solicitor-General moved for the entry of nolle prosequi on Plaintiff's remaining charges and explained:

> After reviewing the video which only shows the actual driver for a split second on screen, anticipating the testimony to align with what has been written in the afore-mentioned affidavits (although the State is somewhat skeptical of the bias of those potential witnesses), and the defendant being able to show that someone named Samuel Wilson exists (or at least has a Facebook page), the State believes the defendant would create a reasonable doubt as to the identity of the driver.

[2] The affidavits did not reveal exactly how Plaintiff's daughter and fiancé knew that Wilson was driving the Kia on that particular night or how any of the affiants knew that Wilson was drinking and doing drugs on the night in question. Obviously, unless the affiants actually saw Wilson drinking and doing drugs, their affidavits would necessarily rely on hearsay.

[Doc. 9-3, p. 40].

Although both Plaintiff and Mr. Wilson are black men, Plaintiff testified that Mr. Wilson is approximately three inches taller than Plaintiff, weighs around 230 to 240 pounds, and has long dreads as opposed to Plaintiff's short haircut. [Doc. 12-19, ¶¶ 44-46; Doc. 9-3, pp. 55, 57].

Plaintiff now brings the instant lawsuit,[3] alleging that Officer Danese violated his federal constitutional rights and Georgia law. [Doc. 1]. Specifically, Plaintiff alleges that Officer Danese, in both his individual and official capacities, maliciously prosecuted Plaintiff in violation of Ga. Code Ann. § 51-7-40, falsely imprisoned him in violation of Ga. Code Ann. § 51-7-20, and violated his Fourth and Fourteenth Amendment rights. [Doc. 1-1]. Having thoroughly reviewed the record and the parties' arguments, the Court rules as follows.

## DISCUSSION

### A. Standard of Review

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). As to issues for which the movant

---

[3] Plaintiff originally filed this action in the Superior Court of Monroe County, Georgia, and Defendant removed it to this Court pursuant to 28 U.S.C. § 1446(a).

would bear the burden of proof at trial, the "movant must affirmatively show the absence of a genuine issue of material fact and support its motion with credible evidence demonstrating that no reasonable jury could find for the non-moving party on all of the essential elements of its case." *Landolfi v. City of Melbourne*, 515 F. App'x 832, 834 (11th Cir. 2013) (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993)).

As to issues for which the non-movant would bear the burden of proof at trial, the movant may (1) simply point out an absence of evidence to support the non-moving party's case or (2) provide "affirmative evidence demonstrating that the [non-movant] will be unable to prove its case at trial." *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant satisfies its burden, the burden shifts to the non-movant, who must "go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citing *Fitzpatrick*, 2 F.3d at 1115–17). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Four Parcels*, 941 F.2d at 1437 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)).

B.     **Plaintiff's Section 1983 Claims**

Plaintiff alleges in his Complaint that "Defendant Danese's acts and omissions resulted in Plaintiff's arrest and seizure, thereby depriving him of his liberty in violation

of the Fourth and Fourteenth[] Amendments of the United States Constitution." [Doc. 1-1, ¶ 40]. It is woefully unclear from this statement what specific claims Plaintiff is seeking to assert under the Fourth and Fourteenth Amendments; however, Defendant assumes that Plaintiff is asserting a malicious prosecution claim against him in his individual capacity and a *Monell* liability claim against him in his official capacity, and Plaintiff does not refute that assumption. *See Alcocer v. Mills*, ___ F.3d ___, 2018 WL 4870716, at *1 (11th Cir. Oct. 9, 2018) ("[T]he first step in any § 1983 analysis requires identification of the precise right that is alleged to have been violated [because] [d]ifferent rights prescribe different legal analyses."). Therefore, the Court also proceeds under that assumption and finds that both claims fail.

### 1. Malicious Prosecution

Plaintiff's first Section 1983 claim is for malicious prosecution. A viable malicious prosecution claim requires proof of "(1) the elements of the common-law tort of malicious prosecution and (2) a violation of [Plaintiff's] right to be free from unreasonable seizures." *Blue v. Lopez*, 901 F.3d 1352, 1357 (11th Cir. 2018) (quoting *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003)). The common-law elements of a malicious prosecution claim are: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Id.* (quoting *Kjellsen v. Mills*, 517 F.3d 1232, 1237 (11th Cir. 2008)).

Officer Danese argues that he is entitled to qualified immunity on this claim. Qualified immunity protects public officers acting within the scope of their discretionary authority as long as they do not violate clearly established law. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). The burden of proof for a qualified immunity defense initially rests with the officer, who must show that he was "acting within the scope of his discretionary authority when the alleged wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). In this case, neither party disputes that Officer Danese acted within his discretionary authority during the attempted traffic stop and the subsequent prosecution of Plaintiff's criminal case. Therefore, the burden shifts to Plaintiff to show that immunity does not apply. *Id.* Plaintiff satisfies this burden if the facts, taken in the light most favorable to him, show that Officer Danese's conduct violated a clearly established constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Eleventh Circuit law clearly established at the time of the events giving rise to this action (July 2, 2015) that an officer violates the Fourth Amendment when he makes "perjurious or recklessly false statements of omissions . . . in support of a warrant." *Kelly v. Curtis*, 21 F.3d 1544, 1554 (11th Cir. 1994). But, an officer does not commit such a violation when the misstatements and omissions are merely negligent. *Id.*

Plaintiff claims that Officer Danese committed such a violation because his positive identification of Plaintiff as the Kia driver "appears to be fabricated." [Doc. 12,

p. 9]. He also claims that Officer Danese omitted facts in both arrest warrants "in reckless disregard for the truth." [*Id.* at pp. 13, 15].

### a.    *Fabricated Evidence*

Plaintiff argues that "based on all the evidence," Officer Danese's positive identification of Plaintiff as the Kia driver "appears to be fabricated." [Doc. 12, p. 9]. If this is true, Officer Danese violated Plaintiff's clearly-established Fourth Amendment rights by "making perjurious or recklessly false statements in support of a warrant." *Kelly*, 21 F.3d at 1554 (citing *Franks v. Delaware*, 438 U.S. 154, 156, 165-71 (1978)). In support of his argument, Plaintiff relies on "conflicts" between Officer Danese's sworn testimony and the dash camera footage of the attempted traffic stop. [Doc. 12, p. 9]. "[W]here an accurate video recording completely and clearly contradicts a party's testimony, that testimony becomes incredible." *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013).

Plaintiff's most compelling argument is that Officer Danese testified and stated in the dash camera footage that the driver had short hair while still shots from the dash camera footage may show that the driver had long hair. [Doc. 12, p. 11; Doc. 12-2, p. 13]. However, that distinction is not apparent from the actual video itself, especially when played in real time and not slowed to a frame-by-frame progression. Any question about the length of the suspect's hair only becomes apparent when a still, pixelated shot from a one-second period of time is enlarged and viewed in isolation, as Plaintiff asks the Court to do now. Although it can be fairly said that the video is a somewhat accurate depiction

of what officer Danese may have seen for a brief interval during the incident, it cannot be questioned that Officer Danese absolutely did not have the benefit of what is effectively a simultaneous instant replay, freeze frame, and zoom feature to assist him in identifying the suspect when he witnessed the incident as it happened.[4]

Moreover, when identifying a suspect for arrest, an officer is not required to meet the exacting standard of certainty that Plaintiff would require. An officer may permissibly arrest a suspect "when the arrest is objectively reasonable based on the totality of the circumstances." *Swanson v. Scott*, ___ F. Supp. 3d ___, No. 2:17-cv-67-FtM-99MRM, 2018 WL 3817760, at *7 (M.D. Fla. Aug. 10, 2018) (citing *Coffin v. Brandau*, 642 F.3d 999, 1006 (11th Cir. 2011)). "This standard is met when the facts and circumstances *within the officer's knowledge*, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* (emphasis added). However, because "[s]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment," this standard does not "require certainty on the part of police." *Dahl v. Holley*, 312 F.3d 1228, 1234 (11th Cir. 2002) (quoting *Craig v. Singletary*, 127 F.3d 1030, 1042 (11th Cir. 1997) (en banc)), *abrogated on other grounds by Lozman v. City of Riviera Beach*, 138 S. Ct. 1945 (2018). Indeed, there is a "substantial

---

[4] To put this in football officiating parlance: there is no indisputable video evidence to refute Officer Danese's testimony or, as explained more fully below, that would create a genuine issue of material fact.

difference" between the level of proof necessary to achieve arguable probable cause and that needed to secure a conviction, particularly because the courts recognize that the information used to secure a warrant "sometimes must be garnered hastily." *Kelly v. Serna*, 87 F.3d 1235, 1241, 1554-55 (11th Cir. 1996) (quoting *Franks*, 438 U.S. at 165-66). And finally, "[t]he Constitution does not guarantee that only the guilty will be arrested," *Deloach v. Bell*, No. 7:06-CV-97(HL), 2008 WL 906399, at *3 (M.D. Ga. Mar. 31, 2008), and therefore, police officers "need not take 'every conceivable step . . . at whatever cost, to eliminate the possibility of convicting an innocent person.'" *Rankin v. Evans*, 133 F.3d 1425, 1436 (11th Cir. 1998) (quoting *Tillman v. Coley*, 886 F.2d 317, 321 (11th Cir. 1989)).

In this case, Officer Danese at first inferred that the Kia was stolen because of the suspended registration and lack of insurance. [Doc. 16, Ex. F, 10:20]. It was only when he found a citation issued to Plaintiff for driving with a suspended registration less than three months prior that he made the reasonable assumption that Plaintiff continued to drive the car unlawfully, reversing his prior reasonable belief that the car was stolen. [*Id.* at 14:12, 23:00]. At no point in the dash camera footage or in his subsequent deposition did Officer Danese appear uncertain or express uncertainty about the length of the driver's hair or who the driver could have been. Additionally, the fact that Officer Danese mentions that there are possible stolen items in the vehicle does not make his identification of Plaintiff as the driver and less reliable. It simply implies that the driver, whoever he is, may have stolen something.

None of Plaintiff's arguments tend to prove that Officer Danese fabricated anything about his identification of the driver. Instead, even if the Court discounted Officer Danese's determination that the driver had short hair, the evidence clearly establishes that the facts and circumstances within Officer Danese's knowledge, of which he had reasonably trustworthy information (i.e., that the driver was a black male approximately 5'9" tall, weighing 180 to 200 pounds, and wearing a blue shirt, which closely matched Plaintiff's description; that Plaintiff owned the Kia; and that Plaintiff had a citation dated less than three months prior for driving with a suspended registration), would cause a prudent officer to believe, under similar circumstances, that Plaintiff was driving the car with a suspended registration, with no insurance, and with open containers of alcohol and drug paraphernalia in the vehicle, and that he fled from police. *See Swanson*, 2018 WL 3817760, at *7. Plaintiff asks the Court to impose a level of certainty on police officers that is neither reasonable nor required by the Constitution. Because Officer Danese's positive identification was reasonable under a totality of the circumstances and because there is no plausible evidence that he falsified the identification, Officer Danese had actual—and not merely arguable—probable cause to arrest Plaintiff and is entitled to qualified immunity and summary judgment on this claim.

Plaintiff argues that Officer Danese intentionally or recklessly omitted the following facts from the first warrant affidavit: (1) "[the dash camera footage] does not show the Driver's face," (2) "there were possible stolen items in the vehicle," and (3) "[Officer Danese] based his identification on the picture on [Plaintiff's] business card." [Doc. 12, p. 13].

As previously stated, it was clearly established at the time of the events giving rise to this action that an officer commits a Fourth Amendment violation when he makes perjurious or recklessly false statements or omissions in support of a warrant. *Kelly*, 21 F.3d at 1554. The officer commits no violation, however, if the statements or omissions are merely negligent as opposed to reckless or intentional. *Id.; see also Madiwale v. Savaiko*, 117 F.3d 1321, 1327 (11th Cir. 1997). Recklessness may be inferred "when the facts omitted from the affidavit are clearly critical to a finding of probable cause," and even when a fact is omitted recklessly or intentionally, a warrant is only invalidated "if inclusion of the omitted facts would have prevented a finding of probable cause." *Madiwale*, 117 F.3d at 1327 (quoting *United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980) and citing *United States v. Jenkins*, 901 F.2d 1075, 1080 (11th Cir. 1990)). An officer loses qualified immunity when "the facts omitted . . . were . . . so clearly material that every reasonable law enforcement officer would have known that their omission would lead to" a violation of federal law. *Id.* (quoting *Haygood v. Johnson*, 70 F.3d 92, 95 (11th Cir. 1995)).

It was *not* clearly established at the time of these events that *all* of an officer's bases for seeking a warrant must be reduced to writing and contained in a warrant affidavit. First and foremost, the Constitution states only that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized," Const. Amend. IV, and officers are not explicitly limited to written oaths or affirmations. Nor do the courts require written warrant affidavits.[5]

Officer Danese's first warrant affidavit, dated July 2, 2015 (the same day the incident occurred), stated:

---

[5] *See, e.g., Garmon v. Lumpkin Cty.*, 878 F.2d 1406, 1408-09 n.1 (11th Cir. 1989) (finding a warrant application affidavit containing only a conclusory statement to be insufficient to support a magistrate judge's determination, but noting that "[i]f the warrant stated that its issuance was based on probable cause shown, for example, we might presume that oral testimony was presented which supported the magistrate's determination. In this case, however, we know that no probable cause existed because the warrant explicitly states that it is supported by information sworn to 'in the above affidavit.'"); *Kelly*, 21 F.3d at 1555 n.8 (finding a conclusory affidavit insufficient to establish probable cause but holding out the possibility that "on remand [Detective] Gibson will produce evidence showing that she did in fact present evidence of probable cause to the magistrate" outside the affidavit.); *Carter v. Gore*, 557 F. App'x 904, 909 (11th Cir. 2014) (finding that an officer violates the Fourth Amendment "only if her affidavit lacked probable cause *and* she should not have *applied* for the warrant. Inherent in this language is the proposition that qualified immunity is not lost when all the evidence available to the officer establishes at least arguable probable cause, even if this evidence is not listed in an affidavit.") (internal citations omitted) (emphasis in original); *Joseph v. Kimple*, 343 F. Supp. 2d 1196, 1203 (S.D. Ga. 2004) ("[I]f Kimple otherwise shows that he supplied probable cause to the magistrate here, he need not show that it is reflected in the arrest-warrant application (or other standard, supporting documentation) itself."); *Fulford v. Fannin*, No. 1:17-cv-00703-VEH-SGC, 2018 WL 914046, at *9 (N.D. Ala. Jan. 22, 2018) *recommendation adopted by* 2018 WL 905349 (N.D. Ala. Feb. 15, 2018) ("Nothing under the Constitution . . . requires an affidavit in support of a warrant to be set forth on a wholly separate sheet of paper."); *King v. State*, 438 S.E.2d 620, 623 (Ga. 1994) ("Although the better practice would be for an issuing magistrate to make a written notation of sworn oral testimony presented in support of a search warrant, it is well established that there is no requirement in the law of Georgia that requires rather than suggests that a magistrate court warrant hearing be recorded. Likewise, nothing requires the magistrate to make some contemporaneous notation of the fact that he relied on sworn oral testimony.") (internal citations omitted).

ON 07-02-15 AROUND 0540 HOURS MR ALEXANDER BEADLE II DID COMMIT THE CRIMINAL ACT OF DRIVING WHILE SUSPENDED, DRIVING WITH NO INSURANCE, DRIVING WITH SUSPENDED REGISTRATION, DRIVING WITH OPEN CONTAINER, AND WILLFUL OBSTRUCTION OF LAW [ENFORCEMENT] OFFICER, WHEN HE FLED ON FOOT DURING A VEHICLE TRAFFIC STOP ON HWY 19/41 NB HAMPTON GA 30228. MR BEADLE II ALSO LEFT THE VEHICLE HE HAD BEEN OPERATING ON 19/41 IN NEUTRAL WHICH ROLLED BACK STRIKING OFFICER'S VEHICLE. INCIDENT CAPTURED ON VIDEO. THE TAG ON THE VEHICLE WAS SUSPENDED FOR NO INSURANCE, THERE WAS NO INSURANCE ON THE VEHICLE, AND DEFENDANT'S DRIVER'S LICENSE WAS SUSPENDED FOR CHILD SUPPORT. AN OPEN BOTTLE OF BEER AND A FLASK OF WHISKEY WERE LOCATED IN THE VEHICLE.

[Doc. 9-3, p. 24].

Plaintiff claims that Officer Danese should have also included the following facts: (1) "[the dash camera footage] does not show the Driver's face," (2) "there were possible stolen items in the vehicle," and (3) "[Officer Danese] based his identification on the picture on [Plaintiff's] business card." [Doc. 12, p. 13]. However, Officer Danese testified that he explained to the magistrate judge that the driver turned to him in profile view while exiting the Kia and that he explained everything else he that occurred during the attempted stop exactly as he told it to the attorney questioning him. [Doc. 14-2, pp. 32:14-18, 55:8-25]. This would include how Officer Danese matched the features that he testified he saw when the driver ran to the picture on Plaintiff's business card and Plaintiff's GCIC database photo. [*Id.* at p. 37:3—38:20]. Plaintiff offers no evidence to refute Officer Danese's testimony, and there is no evidence that the magistrate judge relied solely on the written warrant affidavit in reaching his decision to issue the July 2, 2015 warrant because the warrant itself is not in evidence. *Cf. Garmon, supra* note 5. It can therefore be

presumed that the magistrate judge knew that Officer Danese based his identification of the driver on Plaintiff's business card and the GCIC database photo.

The other omissions from the July 2 affidavit are immaterial. That the driver's face was not on the dash camera footage is not determinative of arguable probable cause to arrest given Officer Danese's eyewitness testimony and his indication in the affidavit that the incident is on video and was available for the magistrate judge to view in making his determination. Likewise, Officer Danese testified that he was incapable of determining whether the two cell phones that were collected as evidence from the scene, which Plaintiff claims were possibly stolen, belonged to anyone at all since that inquiry was "beyond [his] pay grade" and he had "no access to that information." [Doc. 14-2, pp. 58:9—59:5]. Thus, Officer Danese would only have been able to tell the magistrate judge that he found two cell phones, who could have belonged to anyone (but were most likely the driver's, who was sufficiently identified through other evidence to outweigh any exculpatory effect this information would have had). Thus, the omissions from the July 2 affidavit were neither material nor intentional or reckless, and Officer Danese is entitled to qualified immunity in relation to that warrant.

*c.*     *Omissions in the March 14, 2016 Arrest Warrant Affidavit*

Plaintiff further argues that Officer Danese intentionally or recklessly omitted facts from the second warrant affidavit, dated March 14, 2016, which states:

DURING A TRAFFIC STOP ON 07/02/15 AROUND 0540AM FROM WHICH MR ALEXANDER BEADLE II RAN OFF, A SMALL QUANTITY OF COCAINE WAS

LOCATED IN A GLASS PIPE INSIDE THE VEHICLE, A SCHEDULE I CONTROLLED SUBSTANCE, IN VIOLATION OF THE GEORGIA CONTROLLED SUBSTANCE ACT. GBI SUBMISSION CONFIRMED THE SUSPECTED COCAINE RESIDUE FROM THE PIPE.

[Doc. 9-3, p. 21].

Unlike the July 2 warrant, the warrant stemming from this affidavit is in the record and signed by a judge, and it states:

To any Sheriff or his deputy, Coroner, Marshall, or Peace Officer of said State, GREETINGS: *For sufficient causes made known to me in the above affidavit* you are hereby commanded to arrest the body of said, ALEXANDER C BEADLE the defendant named in the foregoing affidavit charged by the prosecutor therein with the offense against the laws of this State as enunciated in said affidavit and bring him/her before me or some other Judicial Officer of this State to be dealt with as the law directs.

[Doc. 9-3, p. 21] (emphasis added). Thus, the Court is not entitled to presume that Officer Danese offered any other evidence to the magistrate judge in support of his warrant application.

Plaintiff argues that Officer Danese intentionally or recklessly omitted the following facts from the affidavit: "that there was not enough cocaine residue in the glass pipe," his six-month delay in sending the crack pipe to the GBI crime lab, and his submission of the crack pipe to the GBI only at the request of the district attorney. [6] [*Id.* at

---

[6] Plaintiff also claims that Officer Danese omitted the fact that he merely "inventoried" the crack pipe rather than accounting for it pursuant to the following Henry County Police Department standard operating procedure. [Doc. 12, p. 14]. However, the actual standard operating procedure is not in the record; the document to which Plaintiff cites in his brief contains nothing regarding drug testing. *See* [Doc. 12-15]. Therefore, the Court refrains from considering any argument pertaining to Henry County Police Department standard operating procedures relating to drug testing.

pp. 13-14]. Although Plaintiff contends that these facts were "clearly critical" to the magistrate judge's decision to issue a warrant, he fails to elaborate as to how or why. "It is not the role of the Court to make arguments for the parties but to consider and decide the specific arguments made by the parties." *Monroe Cty. Emps.' Ret. Sys. v. Southern Co.*, ___ F. Supp. 3d ___, 2018 WL 3814304, at *5 (N.D. Ga. Aug. 10, 2018) (citing *Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011) ("To prevail on a particular theory of liability, a party must present that argument to the district court. Our adversarial system requires it; district courts cannot concoct or resurrect arguments neither made nor advanced by the parties.")). Accordingly, it is Plaintiff's duty to present evidence and arguments to contest Defendant's motion, and the Court declines to assume this duty due to his failure to make non-conclusory arguments. Thus, this claim fails, and Officer Danese is entitled to summary judgment.

## 2. *Monell* Liability

Plaintiff also asserts a claim against Officer Danese in his official capacity, which is, in effect, a claim against Officer Danese's employer, Henry County. *See Kentucky v. Graham*, 473 U.S. 159 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). However, in the context of a Section 1983 action, there can be no liability for a county-employer on the basis of respondeat superior unless the employee's acts were committed in accordance

with the county's policies or customs. *Monell*, 436 U.S. at 694 ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983.").

Plaintiff argues that Officer Danese arrested him without probable cause because of "Henry County Police Department's utilization of an arrest quota system," and that "[Officer] Danese's desire to fill his quota led to him fabricating his identification of [Plaintiff] as the Driver." [Doc. 12, p. 18]. This quota system, Plaintiff argues, is the policy or custom that led to Plaintiff's allegedly unlawful arrest.

The Court previously found that Officer Danese had actual probable cause to arrest Plaintiff and that he did not commit any constitutional violation when he applied for and received arrest warrants. Accordingly, there is no violation upon which the County may be held liable, and the Court grants summary judgment on this claim.[7]

---

[7] Plaintiff also presents no evidence to establish a causal connection between the County's arrest quota policy and Officer Danese's alleged constitutional violations, which invalidates his *Monell* liability claim. *Cf. White v. City of Atlanta*, 449 F. App'x 804, 806 (11th Cir. 2011) (affirming summary judgment where the plaintiff "failed to provide any direct causal link between" his allegations that corrupt officers coerced him and the city's policies regarding arrest quotas and fabricated warrants); *see also Board of Cty. Comm'rs v. Brown*, 520 U.S. 397, 415 (1997) ("Congress did not intend municipalities to be held liable unless *deliberate* action attributable to the municipality *directly* caused a deprivation of federal rights.") (emphasis added).

### C.    Plaintiff's State-Law Claims

Finally, Plaintiff alleges that Officer Danese violated Ga. Code Ann. §§ 51-7-40 (malicious prosecution) and 51-7-20 (false imprisonment). Officer Danese argues that he is entitled to official immunity under Georgia law.

Public officials enjoy official immunity under Georgia law when they are sued "in their individual capacities for discretionary actions within the scope of their official authority performed without actual malice or actual intent to cause injury." *Rodriguez v. Kraus*, 619 S.E.2d 800, 802 (Ga. Ct. App. 2005). Discretionary actions include decisions to arrest suspects. *Id.* Actual malice is shown by more than ill will; it "must also be combined with the intent to do something wrongful or illegal." *Adams v. Hazelwood*, 520 S.E.2d 896, 898 (Ga. 1999). "Actual malice does not include implied malice, or the reckless disregard for the rights and safety of others." *Marshall v. Browning*, 712 S.E.2d 71, 74 (Ga. Ct. App. 2011) (quoting *Selvy v. Morrison*, 665 S.E.2d 401, 405 (Ga. Ct. App. 2008)). Moreover, to prove actual intent to cause injury, a plaintiff must show that the defendant intended to harm the plaintiff, rather than simply showing that the defendant intended to do the act that resulted in the harm. *Hart v. Sirmans*, 784 S.E.2d 67, 69 (Ga. Ct. App. 2016).

Here, Plaintiff offers no evidence that Officer Danese acted with actual malice or actual intent to cause injury. Therefore, the Court grants Officer Danese's motion for summary judgment on Plaintiff's state-law claims.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Officer Danese's Motion for

Summary Judgment [Doc. 9] and **DISMISSES** this case.

**SO ORDERED**, this 25th day of October, 2018.


**S/ Tilman E. Self, III**
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**